A94A0401, A94A0402. BUSCHEL et al. v. KYSOR/WARREN
et al.; and vice versa.
(444 SE2d 105)

BIRDSONG, Presiding Judge.

Pursuant to the grant of a discretionary appeal under OCGA § 5-6-35 (a) (1), Brandon and Brandi Bartrug, the minor children of deceased employee Sara C. Buschel, by their next friend Lori Foster (collectively "Buschel"), appeal the judgment of the superior court reversing the award of the State Board of Workers' Compensation. They contend the superior court's judgment is a nullity because the award of the full board was affirmed by operation of law when the judgment was not entered within 20 days of the hearing as required by OCGA § 34-9-105 (b). They also contend the superior court erred by reversing the award as it should have been affirmed under the any evidence rule. The employer, Kysor/Warren and its insurance carrier, Wausau Insurance Company, have filed a cross-appeal contending the board's award was erroneous because it was based upon inconsistent theories of recovery and the findings were not supported by the evidence.

While an employee of Kysor/Warren, Sara Buschel cleaned insides of refrigeration cases with toluene, a toxic chemical closely monitored by the Occupational Safety & Health Administration. According to evidence presented, excessive inhalation of toluene vapors can cause nasal and respiratory irritation, central nervous system effects, including dizziness, weakness, fatigue, nausea, headache, possible unconsciousness, and death. Because the employer did not measure the amount of toluene in the refrigeration cases, the amount of toluene Buschel inhaled or her exposure on a daily basis is not known. Lethal levels of toluene, however, were not found in her body after her death.

Although a pre-employment physical found her in good health, after beginning work with Kysor/Warren, Buschel started experiencing headaches and severe nosebleeds. She frequently took headache medications on and off the job and requested and received from her employer a face mask to wear at work, and she told others that the chemicals at work made her "high," burned her nose, and made her head pound. Buschel submitted claims reporting these symptoms to her employer on three occasions, and these experiences were confirmed by other employees. Further, one week before her death, she complained of loss of bowel control.

On November 10, 1990, Buschel and a co-worker worked on refrigeration cases very near the company's break room. Although it does not appear that she worked with toluene, shortly before the 9:00 a.m. regularly scheduled break, she complained of headaches and took headache medicine. At 9:00 a.m. she walked to the break room and

bought a soft drink, but even before she could sit down, she collapsed, gasping for air. Although an ambulance responded and Buschel was given CPR, she was pronounced dead in the emergency room after she was rushed to a local hospital.

When the employer contested a claim for workers' compensation death benefits, the claim was referred to an administrative law judge. Thereafter, a hearing was held.

Although four different pathologists gave opinions on the cause of Buschel's death, they could not agree on its cause. One pathologist, retained by the employer, stated that in his opinion the death resulted from viral myocarditis. This pathologist, however, acknowledged that people do not usually die from myocarditis, and he also testified that toluene can kill. Two of the pathologists, one who conducted the autopsy and who is the deputy medical examiner for Fulton county and under contract with the Georgia Bureau of Investigation and the other retained by Buschel, rejected myocarditis as the cause of death, but they could not state a definite cause of death. The fourth pathologist, also retained by the employer, also stated that perhaps another kind of myocarditis was the cause of death, but deemed more information necessary before a definite conclusion could be reached. This pathologist also acknowledged that it was unusual for death to result from myocarditis. From the pathologists' testimony it was apparent that the symptoms Buschel exhibited differed from the symptoms displayed by people suffering from myocarditis, and she did not display classic symptoms of myocarditis. Further, the autopsy showed that her heart was not consistent with that of one who died from myocarditis.

Based on this evidence, the ALJ found that Buschel's death was unexplained and applied the presumption that arises from an unexplained death so that Buschel's death was presumed to have arisen out of and in the course of her employment. Thus, given the uncertainty on the cause of Buschel's death and the employer's inability to rebut the presumption, the ALJ found that Buschel's death arose out of her employment.

The ALJ rejected the employer's "on break" defense because Buschel collapsed immediately upon entering the break room and Buschel did not suffer any injury or accident while on break. Instead, the ALJ concluded that Buschel's death resulted from long-term exposure from toluene in her work place, and that the injury occurred in the work place and not in the break room. The ALJ found that Buschel's death arose out of and in the course of her employment and as a direct result of her performance of the job duties with the employer. Consequently, the ALJ awarded funeral expenses and payment of weekly death benefits to Buschel's two minor children.

After the employer's appeal to the full board was unsuccessful,

the employer next appealed to the superior court. The record shows the appeal was heard by the superior court on July 16, 1993, and the court signed the order reversing the award on August 5, 1993, but the order was not entered until August 6, 1993, 21 days after the hearing.

Appellants were granted authority to file this appeal. The employer filed a timely cross-appeal. *Held*:

## Case No. A94A0401

1. Under OCGA § 34-9-105 (b) the order disposing of a workers' compensation appeal must be "entered" within 20 days of the hearing on the appeal or the award of the board will be affirmed by operation of law. Although this court in *Travelers Ins. Co. v. McNabb*, 201 Ga. App. 297, 298-299 (410 SE2d 788) and our Supreme Court in *Felton Pearson Co. v. Nelson*, 260 Ga. 513, 515 (397 SE2d 431) did not require exact compliance with other time limits set forth in OCGA § 34-9-105 (b), the *Felton Pearson* decision is premised in part upon the 20-day time limit in the Code section to assure speedy resolution of appeals. Here, as the superior court did not satisfy that ultimate time limit, the State board's award was affirmed by operation of law when the order was not entered as required by OCGA § 34-9-105 (b), and the judgment of the superior court is a nullity. *Miller v. Merck & Co.*, 199 Ga. App. 722, 723 (405 SE2d 761); *Coronet Carpets v. Reynolds*, 199 Ga. App. 383 (405 SE2d 103); *Synthetic Indus. v. Camp*, 196 Ga. App. 637 (396 SE2d 518).

2. In view of our disposition in Division 1, Buschel's other enumeration of error is moot. Appellants' contentions regarding the sufficiency of the evidence to support the State board's award will be considered in connection with the cross-appeal.

## Case No. A94A0402

3. Buschel has moved to dismiss the cross-appeal because Kysor/Warren filed a cross-appeal under OCGA § 5-6-38 (a) and did not use the discretionary appeal procedures in OCGA § 5-6-35. "[U]nder the Appellate Practice Act, an appeal which, standing alone, would be subject to discretionary appeal procedures, is appealable as a matter of right if it is classifiable as a cross-appeal to an appealable order." *McClure v. Gower*, 259 Ga. 678, 680 (385 SE2d 271). Accordingly, the motion to dismiss the cross-appeal is denied.

4. Kysor/Warren contends the State board erred by adopting the ALJ's award because it was based on inconsistent theories of recovery, i.e., the decedent died of unexplained causes thus invoking the presumption that her death arose out of and in the course of her employment, and yet the ALJ also found that the death resulted from long-term exposure to toluene. Even though there is an apparent con-

flict between these two theories, we find no legal significance in the conflict because the regularly scheduled break defense was not established sufficiently to rebut the unexplained death presumption.

This presumption arises when the employee's death is "unexplained." *Odom v. Transamerica Ins. Group*, 148 Ga. App. 156, 157 (251 SE2d 48); *Hartford Accident &c. Co. v. Trigg*, 144 Ga. App. 74, 76 (240 SE2d 725). This does not mean, however, that the immediate cause of death must be unexplained; it means that the precipitating cause, rather than the immediate cause, of death must be unexplained. *Zamora v. Coffee Gen. Hosp.*, 162 Ga. App. 82, 84-86 (290 SE2d 192).

As the unexplained death presumption has been expanded to include cases in which the employee becomes ill at her place of employment and dies from such illness at the hospital (*Southwire Co. v. Cato*, 250 Ga. 895, 897, n. 2 (302 SE2d 91); *Gen. Accident Fire &c. Ins. Co. v. Sturgis*, 136 Ga. App. 260 (221 SE2d 51)), the location on the employer's premises where the employee becomes ill or collapses during working hours is not a significant factor in determining whether the presumption arises, so long as the employee's death is unexplained within the meaning of *Zamora* and the location is not where the employee was unauthorized. Although the presumption might arise under slightly different circumstances than those in which an employee is found dead, this is not significant as there should be witnesses available who could establish the circumstances of the precipitating cause of the injury and someone other than the deceased employee determined where she was to be taken after she was found collapsed and dying.

Of course, the presumption may be overcome by the employer introducing evidence showing that the death did not arise from and out of the decedent's employment (*Zamora*, supra at 87; *Hartford Accident &c. Co. v. Cox*, 101 Ga. App. 789, 794 (115 SE2d 452)), and in this instance Buschel's employer attempted to do so through the "scheduled break" defense. See *Wilkie v. Travelers Ins. Co.*, 124 Ga. App. 714 (185 SE2d 783). Although Kysor/Warren established that Buschel collapsed in the break room after a regularly scheduled break commenced, the employer failed to present evidence showing that whatever injury produced her death occurred in the few moments after the break started. Therefore, the employer did not establish an essential element of the break defense: that the injury occurred during the scheduled break (*Miles v. Brown Transport Corp.*, 163 Ga. App. 563, 564 (294 SE2d 734)), and therefore, failed to rebut the unexplained death presumption since its proof did not affirmatively establish a noncompensable explanation for Buschel's injury. See *Intl. Paper Co. v. Gilbourn*, 144 Ga. App. 175, 177 (240 SE2d 722).

In any event, whether the general presumption was rebutted is a

question of fact, and the evidence presented does not demand a finding that the presumption was overcome. Thus, regardless of the erroneous conclusion about toluene poisoning, the award of the board was authorized by the evidence. *Maryland Cas. Co. v. Lewis*, 145 Ga. App. 468 (243 SE2d 679).

Therefore, the unexplained death or dying presumption standing alone is sufficient to support the award of the State board. Moreover, whether injury arose out of and in the course of employment are questions of fact which we must affirm if there is any evidence to support the board's findings. *Chattooga County v. Bruce*, 163 Ga. App. 478, 479 (294 SE2d 712); *Howard Sheppard, Inc. v. McGowan*, 137 Ga. App. 408, 410 (224 SE2d 65). In this appeal, the evidence supporting the full board's reliance on the presumption that Buschel's death arose in the course of her employment necessarily eliminates the applicability of the regularly scheduled official break defense. Therefore, the superior court erred by not affirming the award under the any evidence rule. *Howard Sheppard, Inc. v. McGowan*, supra.

5. Accordingly, Kysor/Warren's contentions that there was no evidence to support the finding that Buschel's death was due to exposure of toluene fumes at work and that the board erred by adopting the ALJ's finding that Buschel's death gave rise to the presumption that her death arose out of and in the course of her employment because she was engaged in a regularly scheduled work break at the time of her death, are without merit for the reasons discussed in Division 4.

The judgment of the superior court is vacated, the case is remanded, and the superior court is directed to issue an order stating the decision of the full board was affirmed by operation of law.

*Judgments vacated and remanded with direction. Cooper and Blackburn, JJ., concur.*

DECIDED APRIL 15, 1994 —
RECONSIDERATION DENIED MAY 2, 1994 —

*Douglas L. Breault*, for appellants.
*Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., Carol E. DeLoach*, for appellees.